# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. COPPINS, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | CV4:19-188 |
| | ) | |
| ANDREW SAUL, | ) | |
| *Commissioner of Social Security* | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Claimant Christopher L. Coppins seeks judicial review of the Social Security Administration's denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Id*. at 1178 (internal quotations and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Administrative Law Judge (ALJ) applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

experience.  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x. 878, 879 (11th Cir. 2015) (footnote added).

## II.   ANALYSIS

Christopher Coppins, who was 59 years old when he filed his application for SSI and DIB benefits and 62 when they were denied, alleges disability beginning on September 14, 2015.  Tr. 72–73.  Claimant has earned a GED and his most recent period of "substantial gainful activity" was in 2006, when he worked as a poultry eviscerator.[2]  Tr. 37–39.  He alleges that he suffers from human immunodeficiency virus (HIV), hepatitis C, and mental health problems, which include bipolar disorder, schizophrenia, depression and anxiety.  Doc. 11 at 2–3; Tr. 249; 286–93; 297–305.  A hearing was held on September 18, 2018, tr. 32–58, after which the ALJ issued an unfavorable opinion, tr. 15–31.  Claimant's request for review was denied.  Tr. 1–6.

---

[2] Claimant was incarcerated between 2007 and 2015.  Following his incarceration, he briefly worked part-time at a grocery store and day-laborer through the temporary agency Staff Zone.  Tr. 37–38.

The ALJ found that claimant's degenerative disc disease of the lower lumbar spine, peripheral neuropathy, borderline intellectual functioning, bipolar disorder, depressive disorder, anxiety disorder, schizoaffective disorder constitute severe impairments. Tr. 17. He also acknowledged claimant's history of antisocial disorder, hepatitis C, human immunodeficiency virus (HIV), alcohol dependence, opioid dependence and cocaine dependence. *Id*. Upon considering the expert and medical opinion evidence of claimant's physical and mental limitations, the ALJ found that claimant's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of the these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20.

He found that claimant retained a residual functional capacity (RFC) to allow for the performance of "light work" as defined in 20 C.F.R. § 416.967(b), including:

> The ability to stand and walk six hours or more of an eight-hour workday and more than six hours of seated work. He can perform frequent bending, balancing, stooping, kneeling, crouching, and climbing of stairs and ramps. He can perform occasional crawling and climbing of ladders, ropes and scaffolds. He can perform simple, routine tasks involving no

>more than simple, short instructions and simple work-related decisions with few workplace changes. He would be able to maintain attention and concentration for two-hour blocks of time during an eight-hour workday and would be able to schedule and maintain regular attendance and be punctual without special supervision. Further, he could have frequent interaction with the public, co-workers, and supervisors.

Tr. 18–19. In applying this RFC, the ALJ found that claimant was capable of performing the responsibilities of poultry eviscerator—his most recent substantially gainful activity—and was not disabled. Tr. 25–26. Claimant disagrees, arguing that his prior employment was not encompassed in the RFC of "light duty," as he was required to stand for the full day. Doc. 11; doc. 13.

### A. ALJ's Formation of the RFC

At issue is that the RFC, as formulated by the ALJ, considers "light work" to include "[t]he ability to stand and walk six hours *or more* of an eight-hour workday and more than six hours of seated work." Tr. 18–19 (emphasis added). Claimant argues that the RFC was incorrectly formulated because he is not able to perform work requiring a full day of standing. Doc. 11.

An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2),

946(c), based on the entire record, 20 C.F.R. §§ 404.1520a (evaluation of mental impairments), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). The RFC represents the most a claimant can do despite his limitations, SSR2 96-8p, and it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctor's."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's RFC). The ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

At the hearing, claimant testified that the greatest challenge to his ability to work is fatigue caused by his chronic conditions and his prescribed medications. Tr. 41–42. He indicated that he is unable to stand for more than 30 minutes. Tr. 53. Claimant additionally testified that, due to fatigue, even normal household chores require frequent breaks for rest and that he is prevented from exercising. Tr. 48–50. Though he did not indicate that a physician has placed a limitation on his ability to lift or carry weight, he expressed that his susceptibility to exhaustion prevents his from lifting more than 20–40 pounds on a regular basis. Tr. 43. He also alleged to suffering neuropathy, which limits his ability to walk. Tr. 43–45.

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. Between the filing of his claim in September 2015 and the hearing in September 2018, claimant had numerous medical examinations, primarily by Chatham Care Center. In discussing these examinations, the ALJ observed several

differences and inconsistencies in claimant's complaints.

Though claimant testified that he easily fatigues due to chronic HIV and Hepatitis C, Tr. 41–42, the ALJ found the problem to be largely absent from his medical history. For example, during an examination in October 2015, a month after the claim was filed, claimant reported no opportunistic indicators related to his chronic conditions and reported that the only symptom was occasional night sweats. Tr. 20–21; Tr. 577–80. The ALJ also found admissions of exercise during an August 2016 exam to be inconsistent with allegations fatigue. Tr. 22; Tr. 752.

The ALJ also found claimant's suggestion that his fatigue is a side effect of medication to be inconsistent with a December 2016 examination in which he denied the existence of side effects, Tr. 22; Tr. 756, and an April 2018 examination in which he was uncertain of any side effects, Tr. 22; Tr. 763. In reviewing the claimant's medical records, the ALJ noted multiple instances in which claimant failed to regularly take his medication. Tr. 639 (December 2015 exam reporting that claimant had been "off/on" his medication); Tr. 749 (June 2016 exam reporting he "has not been on med[ication] for about six months"); Tr. 752 (August 2016 exam reporting missing doses "[e]very now an then, 'a day or two, here

and there'"); Tr. 759 (September 2017 exam admitting missed dosed); Tr. 763 (April 2018 exam reporting "sometimes missing 1–2 does during the week, but not every week"). While an April 2018 report by Dr. Greer did report that claimant experienced nausea, peripheral neuropathy, and depression as a result of his mediation, Tr. 744; however, the ALJ did not give the report significant weight as it was inconsistent with the other reports, Tr. 23.

The ALJ also found the medical records to be inconsistent with claimant's allegations of leg and back pain. During an October 2015 examination—after completing his period of incarceration—claimant reported suffering nerve pain, mostly in his left leg. Tr. 641. The ALJ found this inconsistent with admissions of "running for exercise while in prison." Tr. 21. During a December 2015 examination, physicians questioned claimant's neuropathy, based allegations that it improved with walking. Tr. 21; Tr. 639–40. The medical report suggests that the leg pain was caused by muscle strain. Tr. 640. The ALJ further notes that six months later, claimant described his leg as hurting "every now and then" and displayed a full range of motion with no complaints of pain or tenderness. Tr. 22; Tr. 749–50. Shortly thereafter, claimant admitted to

exercising. Tr. 22; Tr. 752. In December 2016, he described pain while standing, but indicated that it was spontaneous and intermittent. Tr. 22; Tr. 756.

The ALJ also noted other contradictions between claimant's testimony and the medical record, such as his consumption of alcohol. Tr. 22. Inconsistent statements are explicit and adequate reasons for the ALJ to find claimant's testimony to lack credibility. *See* 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). As a result, the ALJ did not err in discounting claimant's testimony.

Claimant also contends that in crafting the RFC, the ALJ erred in giving the report of Dr. Livingston "significant weight," but implicitly disregarded her finding that claimant is not capable of standing for long periods of time. Doc. 11 at 6–8. Dr. Livingston opined that claimant "may have difficulty with heavy lifting, prolonged sitting, standing and walking and with repetitive bending and squatting and with crouching and climbing" due to a "back condition." Tr. 654. She also observed that claimant may have difficulty with his chronic conditions, if they are not well managed. *Id*. The ALJ gave the report "significant weight" but noted that such credibility was relevant only for the period of the examination.

Tr. 21–22. He also observed that the report was not consistent with claimant's other medical records. Tr. 22.

An ALJ may discount a treating physician's opinion if he gives good reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(c)(2)-(3); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). While a treating physician's opinion is valuable to the ALJ's RFC assessment, it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Astrue*, 365 F. App'x at 999 ("the task for determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c)(the ALJ has the responsibility for determining a claimant's RFC). Indeed, the ALJ need not adopt every limitation assessed by a credited medical source, nor must his RFC assessment mirror the opinion of every doctor. *Adams v. Comm'r Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (an ALJ's decision need not address every limitation in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and

the claimant's condition as a while); 20 C.F.R. §§ 404.1527(b),(c); 416.927(b),(c). The ALJ found the opinion of Dr. Livingston, though accurately reflecting claimant's symptoms on the date of the examination, to be inconsistent with the record as a whole. Tr. 21–22. Though he discounted the need to limit prolonged periods of standing, the ALJ did give weight to the medical and psychological consultant's opinions regarding the ability of the claimant to "perform a wide range of light exertional, unskilled work." Tr. 25. Therefore, there was no error in concluding claimant's RFC of light work.

### B. Claimant's Ability to Perform Past Relevant Work

The ALJ concluded that claimant's past relevant work as a poultry eviscerator "does not require the performance of work-related activities precluded by the" RFC of light work. Tr. 25. He explained:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The vocational expert testified that a hypothetical individual with the claimant's age, education, past work, and residual functional capacity described in this determination, would be able to perform the claimant's past relevant work as a poultry eviscerator.

*Id*. At the hearing, claimant described his prior work as a poultry eviscerator as requiring him to stand for a full eight-hour day. Tr. 38; 51.

Claimant argues that the RFC does not encompass the job of poultry eviscerator and he is incapable of returning to the job as it requires standing for a full eight-hour day. Doc. 11; Doc. 13; Doc 17.

"A claimant is not disabled if she is able to perform her past work either as she actually performed it or as it is generally performed in the national economy." *Fries v. Comm'r Soc. Sec.*, 196 F. App'x. 827, 831–32 (11th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)). When determining whether a claimant can perform the job responsibilities of his past relevant work, a "full and fair record" must be developed. *Williams v. Comm. Soc. Sec. Admin.*, 805 F.App'x. 692, 695 (11th Cir. 2020) (*citing Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987)). "In evaluating the demands of a claimant's past work, an ALJ may rely on the job descriptions set forth in the Dictionary of Occupational Titles (DOT) to determine the level of the work (from sedentary to very heavy) it required, as well as the claimant's own account of the work." *Id.*; 20 C.F.R. § 404.1560(b)(2). The ALJ may also consider the testimony of a vocational expert. 20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the

claimant actually performed it or as generally performed in the national economy."); *See also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) ("The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert.").

In objecting to the ALJ's determination that poultry eviscerator qualifies as light work, claimant gave considerable weight to Social Security Ruling (SSR) 83-10, which provides clarification to the various categories of capacity. SSR 83-10. SSR 83-10 provides "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10. By its own language, however, the ruling is applicable only at step five of the ALJ's sequential analysis. *Id.* ("Purpose: To clarify the manner in which the medical-vocational rules in Appendix 2 of Subpart P, Regulations No. 4, address the issue of *capability to do other work*, and to provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules." (emphasis added)). As the ALJ determined

claimant to be capable of returning to his past work as step four, any limitations recognized by SSR 83-10 are not relevant. Furthermore, to the extent that the SSR might have some persuasive value, its language defines "light work" as permitting only six hours of standing or walking per day when such work will coincide with "frequent lifting or carrying." SSR 83-10. Such additional exertion is not required for a poultry eviscerator under either claimant's or the DOT's description.

The ALJ relied upon The Dictionary of Occupational Titles, which categorizes the position as poultry eviscerator as "light work." Tr. 25. Though the position requires only a negligible amount of weight to be lifted, the "light work" designation is appropriate:

> (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible."

DOT § 525.687-074, 1991 WL 674456. During the hearing, a vocational expert also provided testimony on the responsibilities of a poultry eviscerator and characterized the job as "light work." Tr. 53–56. She further confirmed that claimant's description of the job, as requiring standing for a full eight-hour day, minus a thirty-minute lunch break and

two fifteen-minute breaks, was consistent with the definition provided in the DOT.  Tr. 56–57.

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillps*, 357 F.3d at 1249, n. 7 (*quoting Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).  The ALJ presented to the vocation expert a hypothetical individual with the limitations described in the adopted RFC.  Tr. 54–55.  The expert confirmed that the hypothetical person would be capable of performing the position of poultry eviscerator. Tr. 55.  In response to a subsequent hypothetical, the vocational expert indicated that that the job could not be performed by an individual only able to stand for two hours per day.  Tr. 55.

"In comparing the claimant's residual functional capacity with the physical and mental demands of his work," the ALJ determined that claimant can perform the job of poultry eviscerator as it is actually performed or as it is generally performed in the national economy.  Tr. 25. In making this determination, the ALJ relied on the DOT and the testimony of the vocational expert.  *Id*.  As poultry eviscerator is not precluded by claimant's RFC, the ALJ did not err in concluding that

claimant is capable of returning to his past relevant work.

## III.  CONCLUSION

Accordingly, as the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.  This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Therefore, within 14 days from the date of this order, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x

542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 9th day of February, 2021.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA